IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Alemayehu Getachew,

    Plaintiff,

    v.                              Case No. 2:04-cv-107

BP North America
Products, Inc.,

    Defendant.

OPINION AND ORDER

    This is an employment discrimination action filed by plaintiff Alemayehu Getachew against his former employer, BP North America Products, Inc. In his pro se complaint, plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq. Plaintiff, who is Black and of Ethiopian origin, first contends that defendant's practice of posting job openings for managerial positions only at defendant's head offices results in discrimination toward minorities. Plaintiff also alleges that his supervisor's act of requiring him to pay for a thirty-dollar lottery ticket which he printed out for a customer who ultimately did not purchase the ticket discriminated against him on the basis of his religion because it forced him to gamble in contravention of his religious principles.

    Attached to plaintiff's complaint is a copy of the charge of discrimination dated December 11, 2002, which plaintiff filed with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"). In his charge, plaintiff alleged that defendant failed to post positions as required by company policy. Plaintiff stated that on September 3, 2002, he was told by

another employee, Kendra Wells, that he was qualified for the position of trainer and that he should apply. He alleged that Wells called the Human Resources Department three times to inquire about an interview for plaintiff, but plaintiff did not receive an interview. He was allegedly informed by Manager Cindy Mcadow on October 18, 2002, that she did not have a position for him. Plaintiff also alleged that he was denied a transfer on October 18, 2002, but that a Caucasian individual was granted a transfer. Plaintiff further stated that on November 24, 2002, he was suspended due to his failure to appear for work or to call. He contended that no other employee was suspended for being a no show and no call. Finally, plaintiff alleged that on August 14, 2002, he was forced to purchase a lottery ticket in order to keep his job. He contended that the above actions were due to his race (Black), his religion (Protestant) and his national origin (Ethiopian).

In a decision rendered on October 9, 2003, the OCRC found that no probable cause existed to believe that defendant engaged in an unlawful discriminatory practice. On November 6, 2003, the EEOC issued a right to sue letter, and plaintiff filed the instant action on February 9, 2004.

I. Summary Judgment Standards

This matter is before the court on the defendant's motion for summary judgment. The procedure for granting summary judgment is found in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).

The Sixth Circuit Court of Appeals has recognized that Liberty Lobby, Celotex and Matsushita effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. Street v. J. C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989).  The court in Street identified a number of important principles applicable in new era summary judgment practice.  For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. Id. at 1479. In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Id. (quoting Liberty Lobby, 477 U.S. at 257).  The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion.

3

Id. It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" Id. (quoting Matsushita, 475 U.S. at 586). Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." Id. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

II. Facts of the Case

The evidence in the record reveals that in December of 2001, plaintiff was hired as a customer service representative at the BP station located at Main and James Roads in Columbus, Ohio. Plaintiff's supervisor was Site Manager Cheryl Daniels.

On July 25, 2002, plaintiff gave his resume to Ms. Daniels and indicated that he was interested in a management job. Ms. Daniels agreed to give plaintiff's resume to her supervisor, Company Account Executive Kay Ransom, and she later did so. Both Ms. Daniels and Ms. Ransom are African-American. Ms. Ransom stated in her affidavit, Exhibit B to defendant's motion for summary judgment, that selection for a managerial position first required the acceptance of the employee into the defendant's management in training program, which includes classroom and on-the-job training. Ms. Ransom and Ms. Daniels discussed plaintiff's work performance. Ms. Daniels told Ms. Ransom that plaintiff often arrived late for his shift and would read the newspaper during work hours. Ms. Ransom also personally visited the stores to observe the employees' work performance. She found plaintiff to be a mediocre employee who did not take the initiative to stock the shelves or clean the

station.  He remained predominately behind the cash register, and he lacked customer service skills such as greeting or thanking customers or suggesting items for purchase, as required of BP customer service representatives.  As a result, Ms. Ransom did not recommend plaintiff for an interview for the management in training program.

Ms. Daniels later told plaintiff that she had given his resume to Ms. Ransom.  Plaintiff did not ask Ms. Daniels any further questions about open positions or promotions.  Plaintiff did not personally speak with Ms. Ransom about his request for a management position, and she received no further inquiries regarding plaintiff's interest in a management position.

According to plaintiff, in September of 2002, his co-worker, Kendra Wells, told him about an available trainer position and encouraged him to pursue it.  Plaintiff testified in his deposition that he called a contact number which put him in touch with defendant's representative in Texas, who told him to contact the human resources department in Columbus.  Plaintiff did not pursue the matter further.

Linda McCrae, a human resources manager for defendant, stated in her affidavit, Exhibit C to defendant's motion for summary judgment, that various avenues are open to applicants seeking jobs with defendant.  At its retail stores, defendant posts only notices of job openings below the level of site manager.  However, defendant posts management jobs on its external website, www.bp.com, and also operates an internal electronic job posting site for employees where non-retail at-site and corporate level positions are posted.  Trainer positions are among the jobs posted

5

on the internal job posting site. According to Ms. McCrae, from July 15, 2002, through August 12, 2003, there were no openings for a trainer position in the Columbus area.

Plaintiff testified at his deposition that he was not alleging that Ms. Daniels, Ms. Ransom or defendant intentionally discriminated against him. Plaintiff's Dep., pp. 105-06, 109-110. He acknowledged that defendant has promoted minorities, including his former co-worker, Ethiopian Jamaal Yusef, and the station manager and assistant station manager at the BP Westerville Road station, who are Somalian. Plaintiff's Dep., pp. 56, 107-08, 139-40. Rather, plaintiff contended that defendant's practice of not posting management positions in its retail sites adversely affected the promotion opportunities of minority employees. Plaintiff's Dep., p. 110.

In August of 2002, plaintiff printed a Mega Millions lottery ticket costing thirty dollars for a customer who refused to purchase it. At that time, Ms. Daniels had posted a policy at her site which required employees to reimburse defendant for any Mega Millions lottery ticket that was generated but not subsequently purchased by a customer. She instituted this policy because the lottery ticket machine did not allow defendant to cancel a transaction after the ticket has been printed, and therefore defendant lost money whenever an employee carelessly entered the incorrect numbers on the machine or the customer refused to pay for the ticket. Plaintiff complained that it was unfair for him to have to pay for the ticket, but he ultimately paid defendant the thirty dollars in two installment payments. He kept the ticket and won some money on it, but less than the thirty-dollar cost of the

6

ticket. When Ms. Ransom learned about this policy, she instructed Ms. Daniels not to follow it because defendant did not expect its employees to reimburse the company for lottery machine losses.

Plaintiff stated during his deposition that he holds a sincere religious belief that gambling is wrong, and that defendant failed to accommodate that belief when he was required to reimburse defendant for the Mega Millions ticket. Plaintiff's Dep., pp. 122-23. He testified that he did not tell Ms. Daniels that he had a religious objection to paying for the ticket. He just told her that he did not think it was fair to require him to pay for the ticket when it was not his mistake. Plaintiff's Dep., pp. 121-22.

The suspension referred to in plaintiff's EEOC charge involved Ms. Daniels not putting him on the work schedule for a week. Plaintiff stated that he was not claiming that this was discriminatory, but rather the result of management error. Plaintiff's Dep., pp. 137-38.

The record further reveals that plaintiff was granted a transfer to the Westerville Road BP station. Plaintiff's Dep., p. 138. Plaintiff failed to appear for work the first two days, claiming that he was in the hospital. Plaintiff's Dep., pp. 140-41. The Westerville station manager, a Somalian, told plaintiff that he did not want plaintiff as an employee at his station. Plaintiff's Dep., pp. 141, 146. Plaintiff attributed this to poor management, not to discrimination based on national origin. Plaintiff's Dep., pp. 143-44.

Plaintiff's employment was terminated effective March 29, 2003, due to plaintiff's failure to appear for work for a period of thirty consecutive days. Ransom Aff., ¶ 7. Plaintiff testified at

7

his deposition that he was not contending that his discharge was due to discrimination based on race or national origin. Plaintiff's Dep., pp. 143-44.

III. Plaintiff's Claims

A. Posting of Job Vacancies

Plaintiff alleges that the failure to post management-level job openings in defendant's stores operates to discriminate against minorities. A disparate impact analysis is used when an employer's facially neutral policy adversely affects a protected class. Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971). The plaintiff is not required to show an intent to discriminate, but must demonstrate a connection between the challenged practice and the resulting disparities between protected and non-protected classes. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657 (1989). A disparate impact analysis is generally used in a class action, but may also form the basis of an individual claim. Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1048 (6th Cir. 1998).

Under a disparate impact theory, a prima facie case is established when: (1) plaintiff identifies a specific employment practice to be challenged; and (2) through relevant statistical analysis proves that the challenged practice has an adverse impact on a protected group. Johnson v. United States Dept. of Health and Human Servs., 30 F.3d 45, 48 (6th Cir. 1994). Once a prima facie case is proven, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment practice. Id. The burden then shifts back to plaintiff to prove either pretext or that a less discriminatory practice existed which would achieve the same business ends. Id. In addition, plaintiff must

8

also show that the facially neutral policy resulted in discrimination that resulted in personal injury to the plaintiff. Bacon v. Honda of America Mfg., Inc., 370 F.3d 565, 577 (6th Cir. 2004).

In this case, plaintiff has submitted no statistical evidence to show that defendant's practice of failing to post management-level positions at its stores has an adverse effect on the promotion opportunities for minority employees. Thus, plaintiff has failed to show that he could prove an essential element of his disparate impact claim. The only anecdotal evidence is plaintiff's acknowledgment that defendant has promoted minorities, including his former co-worker, Ethiopian Jamaal Yusef, and the station manager and assistant station manager at the BP Westerville Road station, who are Somalian.

Plaintiff has also failed to show that the lack of job postings resulted in injury to him. The evidence regarding plaintiff's efforts to obtain a trainer position, the only specific position in which he showed an interest, reveals that plaintiff's resume was forwarded for consideration by his supervisor. Plaintiff also indicated that when he called a phone number provided by the defendant, he was referred to the defendant's human resources department in Columbus to pursue his promotion inquiries, but that he never made any further inquiries. Defendant also produced evidence that job openings are posted on defendant's internal and external web sites. Plaintiff offers no evidence that these sources were unavailable to him. He has also produced no evidence of available positions for which he was qualified and for which he would have applied.

9

No genuine issue of material fact has been shown to exist in regard to plaintiff's disparate impact claim, and defendant is entitled to summary judgment on that claim.

B. Trainer Position

In his EEOC charge, plaintiff alleged that he was discriminated against on the basis of his race and national origin due to the failure of defendant to award him a trainer position. This claim was not included in the text of plaintiff's pro se complaint filed in this court, but plaintiff did attach a copy of his EEOC charge to the complaint as an exhibit.  Therefore, this court will address this claim.

In order to establish a Title VII employment discrimination claim, a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment. White v. Columbus Metropolitan Housing Auth., 429 F.3d 232, 238 (6th Cir. 2005). Plaintiff has produced no direct evidence of discrimination. Therefore, plaintiff's claim of failure to promote him to a trainer position is analyzed under the burden-shifting approach set forth in McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973). Under the McDonnell Douglas framework, the plaintiff bears the initial burden of presenting a prima facie case of discrimination. White, 429 F.3d at 238. Once plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for taking the challenged action. Id. If the defendant satisfies this burden, the plaintiff must then prove that the proffered reason was actually a pretext to hide unlawful discrimination. Id.

To show a prima facie case of discrimination in the failure to promote, plaintiff must show that: (1) he was a member of a protected group; (2) he applied for and was qualified for the desired position; (3) he was considered for and denied the position; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's promotion was denied.  Id. at 240-242.

In this case, plaintiff has failed to produce evidence sufficient to establish the second, third and fourth elements of the prima facie case.  He has produced no evidence concerning the job requirements for the position of trainer, nor has he shown that he met those requirements.  There is also no evidence that plaintiff was ever considered for the position of trainer.  Defendant has produced evidence through the affidavit of Linda McCrae, a human resources manager, that during the relevant time period between plaintiff's expression of interest in the trainer position and plaintiff's termination, there were no openings in the Columbus area for the position of trainer.

Plaintiff alleges in his complaint that he was told by Kendra Wells, a co-worker, that there was an available trainer position.  However, plaintiff has presented no sworn evidence from Ms. Wells.  Plaintiff's hearsay statement concerning what he was told by Ms. Wells is not admissible in summary judgment proceedings.  <u>U.S. Structures, Inc. v. J.P. Structures, Inc.</u>, 130 F.3d 1185, 1189 (6th Cir. 1997); <u>Hartsel v. Keys</u>, 87 F.3d 795, 799 (6th Cir. 1996).  Plaintiff has produced no competent evidence that a trainer position was held open by defendant during the relevant period.  Plaintiff has also produced no evidence that a person not in the

11

protected class was awarded a trainer position during that time.

Plaintiff has failed to show that he could prove a prima facie case of discrimination.  See <u>Syvongxay v. Henderson</u>, 147 F.Supp.2d 854, 858 (N.D.Ohio 2001)(plaintiff failed to establish a prima facie case where there was no evidence of an open position). Plaintiff also testified at his deposition that he was not alleging that Ms. Daniels and Ms. Ransom, who are African-American, intentionally discriminated against him.

Defendant is entitled to summary judgment on plaintiff's claim of discrimination due to the failure to promote him to a trainer position.

## C. Other Promotions

To the extent that plaintiff's pleadings may be construed as disparate treatment claims complaining about discrimination due to the failure to promote him to unspecified other positions, such claims exceed the scope of his complaint in this court as well as the scope of his EEOC charge.  Federal courts do not have subject matter jurisdiction of Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge.  <u>Jones v. Sumser Retirement Village</u>, 209 F.3d 851, 853 (6th Cir. 2000); <u>Davis v. Sodexho, Cumberland College Cafeteria</u>, 157 F.3d 460, 463 (6th Cir. 1998).  The claim must grow out of the EEOC investigation, or the facts alleged in the charge must be sufficiently related to the claim such that those facts would prompt an investigation of the claim.  <u>Jones</u>, 209 F.3d at 853.  Claims of failure to promote are discrete acts, easy to identify, which constitute separate actionable unlawful employment practices.  <u>National Railroad</u>

Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). Such discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Id. Here, any claims of disparate treatment in promotion which plaintiff now seeks to assert, other than the position for trainer discussed above, were never included in a timely charge filed with the EEOC, and such claims are not properly before this court.

Even if this claim is considered, plaintiff has failed to produce evidence that other similarly qualified non-minority employees were given the opportunity to participate in the manager in training program when he was not. Further, defendant has produced evidence of a legitimate nondiscriminatory reason as to why plaintiff was not considered for the program. There is evidence that plaintiff often arrived late for his shift and would read the newspaper during work hours. Ms. Ransom stated in her affidavit that she personally observed plaintiff and found him to be a mediocre employee who did not take the initiative to stock the shelves or clean the station. Plaintiff remained predominately behind the cash register, and he lacked customer service skills such as greeting or thanking customers or suggesting items for purchase. Ms. Ransom stated that as a result, she did not recommend plaintiff for an interview for the management in training program. Plaintiff has presented no evidence to contradict this assessment of his performance, or to show that these stated reasons were a pretext for discrimination.

Plaintiff also argues that summary judgment is inappropriate because he has not received discovery from the defendant. Fed.R.Civ.P. 56(f) provides in relevant part:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f).  Here, plaintiff submitted no affidavit in support of his request for additional discovery, as required under Rule 56(f).  See United States v. Dairy Farmers of America, Inc., 426 F.3d 850, 863 (6th Cir. 2005).  In addition, plaintiff failed to comply with the requirement that the party opposing the motion for summary judgment must indicate "'what material facts it hopes to uncover.'" Gettings v. Building Laborers Local 310 Fringe Benefits Fund, 349 F.3d 300, 305 (6th Cir. 2003)(quoting Cacevic v. City of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000)).

In addition, defendant indicated in its March 2, 2005, response to plaintiff's motion to compel discovery that defendant would produce documents regarding the job requirements for BP site managers and individuals admitted to the manager in training program, a prerequisite for promotion.  Defendant also agreed to provide records of the race of the individuals accepted into the program during the relevant period of time, and indicated that defendant does not keep records of an employee's national origin. Thus, plaintiff was provided with sufficient discovery to identify the employees who were accepted into the management in training program.  No extension of time for additional discovery is warranted.

Defendant is entitled to summary judgment on plaintiff's general failure to promote claim.

D. Failure to Transfer

Plaintiff did not allege failure to transfer in the body of his complaint in this court. However, discrimination in transfer was alleged in his EEOC charge. Plaintiff stated in his EEOC charge that he was denied a transfer on October 18, 2002, while a Caucasian individual was granted a transfer.

In order to prove a claim of disparate treatment, plaintiff must show: (1) that he is a member of a protected class; (2) that he was treated differently than a non-protected person. Mitchell v. Toledo Hospital, 964 F.2d 577, 583 (6th Cir. 1992). Plaintiff must show that he and the non-protected person were similarly situated in all respects. Id. Plaintiff has produced no evidence to support his conclusory claim that he was denied a transfer. The circumstances of that denial are not asserted in his EEOC charge. However, in the decision rendered by the OCRC on October 9, 2003, Exhibit D to defendant's motion for summary judgment, the agency official noted that:

> [T]estimony substantiates that there was no position available for Charging Party to transfer to at the location of interest to Charging Party. Testimony substantiates that there were no transfers to the Morse and Hamilton store in September or October 2002 and Charging Party could not further identify any specific individuals who were transferred. Testimony substantiates that Charging Party was offered a position at a new station to be opened on or about November 1, 2002 but that he declined that offer because of the location.

There is no evidence in the record that plaintiff was denied a transfer to an available position while another similarly-situated non-minority employee was granted a transfer. In addition, plaintiff testified in his deposition that he was granted a

transfer to the Westerville Road BP station. Plaintiff has failed to show that he could prove the elements of his prima facie case of discrimination in regard to a transfer, and defendant is entitled to summary judgment on that claim.

E. Suspension

Plaintiff alleges that on November 24, 2002, he was suspended for failure to appear for work or to call in. Plaintiff has presented no evidence to support this claim. The OCRC decision states that plaintiff's personnel file "contains no suspension or formal discipline for any no call/no show in November 2002." Defendant's Motion for Summary Judgment, Ex. D. The decision further states that plaintiff "was not suspended, but he was not placed on the schedule because he had not contacted the Store Manager regarding his availability." Id. When asked about this claim during his deposition, plaintiff stated that he was not claiming that the failure to include him on the work schedule was discriminatory, but instead was the result of management error. Plaintiff's Dep., pp. 137-38. Plaintiff has failed to present evidence to support a prima facie case of disparate treatment, and defendant is entitled to summary judgment on this claim.

F. Termination

Plaintiff argues that his termination was the result of discrimination. However, plaintiff did not include this claim in his complaint in this court or in his EEOC charge. Thus, this claim is not properly before this court. Even if this claim is considered, plaintiff has produced no evidence to support it. In contrast, defendant has presented evidence through the affidavit of Ms. Ransom that plaintiff was suspended due to his failure to

16

appear for work for a period of thirty consecutive days. In addition, plaintiff testified at his deposition that he was not contending that his discharge was due to race or national origin discrimination. Plaintiff's Dep., pp. 143-44. Defendant is entitled to summary judgment on this claim.

G. Discrimination Based on Religion

Plaintiff argues that the fact that he was required to reimburse defendant for a lottery ticket which a customer did not purchase constituted discrimination based on his religious beliefs. Title VII makes it unlawful for an employer to discriminate against an employee on the basis of religion. 42 U.S.C. §2000e-2(a)(1). That section provides that it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion[.]" Id. The term "religion" includes:

> all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. §2000e(j).

To establish a prima facie case of failure to accommodate a religious belief, plaintiff must show that: (1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement. Virts v. Consol. Freightways Corp. of Delaware, 285 F.3d 508, 516 (6th Cir. 2002); Smith v. Pyro

Mining co., 827 F.2d 1081, 1085 (6th Cir. 1987).  Once plaintiff has established a prima facie case, the burden shifts to the employer to show that it could not reasonably accommodate the employee without undue hardship.  Virts, 285 F.3d at 516.

In this case, plaintiff has failed to sustain his burden of showing that he could prove a prima facie case of discrimination. There is no evidence that plaintiff ever informed defendant that requiring him to pay for the lottery ticket would offend his religious beliefs.  In fact, plaintiff testified in his deposition that he did not tell his supervisor, Ms. Daniels, that he had a religious objection to paying for the ticket.  Plaintiff's Dep. pp. 121-122.  Plaintiff has also failed to show that he was discharged or disciplined as result of refusing to comply with the requirement.  Discharge or discipline is an essential element of the prima facie case of religious discrimination in employment. Goldmeier v. Allstate Ins. Co., 337 F.3d 629, 637 (6th Cir. 2003). Since plaintiff has produced no evidence to support these elements of the prima facie case, defendant is entitled to summary judgment on this claim.

IV. Conclusion

In accordance with the foregoing, this court concludes that no genuine issue of material fact has been shown to exist in regard to any of plaintiff's claims.  Defendant's motion for summary judgment is well taken, and it is hereby granted.  The clerk shall enter judgment in favor of defendant on all of plaintiff's claims.

Date: February 2, 2006            _____s\James L. Graham_____
                                  James L. Graham
                                  United States District Judge

18